UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANKIE CUEVAS

vs.                                                              Case No. 8:11-CV-240-T-27AEP

UNITED STATES OF AMERICA
_____/

### ORDER

In accordance with *Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005), an evidentiary hearing was conducted on June 18, 2012 on Ground Two of Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.[1] Construed liberally, Ground Two asserts a claim that Petitioner was denied effective assistance of counsel because his attorney did not file a notice of appeal after being requested to do so.

Upon consideration, the motion is GRANTED as to Ground Two, but not because counsel failed to file an appeal after being requested to do so. Rather, the evidence supports a finding that prior to sentencing, Petitioner's attorney fulfilled his Sixth Amendment responsibility by discussing Petitioner's right to appeal with him and determining that Petitioner understood and agreed that there was no basis on which to appeal so long as his sentence was within the advisory guideline range.

Indeed, Petitioner's sentence was below the advisory guidelines range, there were no contested sentencing issues, and Petitioner and counsel were still working toward earning a Rule 35 motion from the prosecutor. Notwithstanding, when the reality of the 15 year sentence sunk in, Petitioner expressed a renewed interest in appealing, but no further consultation with counsel occurred, contrary to *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). Petitioner is therefore granted an out-of-time appeal.

---

[1] Grounds One and Three were previously dismissed.

1

An attorney who fails to file an appeal after being directed to do is constitutionally ineffective. *Gomez-Diaz v. United States, supra*; *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000) ("Counsel performs in a professional unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."). In the absence of an express request to file an appeal, counsel must make a "reasonable effort to determine the client's wishes." *Flores-Ortega, supra* at 478. And if the client "reasonably demonstrate[s] an interest in appealing," the attorney has an affirmative duty to consult with the client to determine the client's wishes. *Gomez-Diaz v. United States*, 433 F.3d at 792 (citing *Roe v. Flores-Ortega*, 528 U.S. at 480).[2]

Although relief will be granted, the record demonstrates some irony in Petitioner's contention that he wanted to appeal. First, Petitioner was represented by one of the most experienced and highly respected CJA panel attorneys in the Tampa Bay area. Petitioner's offense and prior record afforded counsel little to work with, however. Petitioner admitted to being the source of cocaine sold to a confidential informant and undercover detective on four occasions (CR Dkt. 47, p. 13-14). He was arrested at the scene of the last sale. And he was correctly classified as a career offender.[3]

---

[2] Ground Two in Petitioner's § 2255 motion to vacate presents yet another claim that counsel failed to file an appeal after being requested to do so. Such claims are becoming increasingly more common among federal inmates seeking collateral relief, and usually require an evidentiary hearing in accordance with *Gomez-Diaz*. Rarely, however, is relief warranted. Complaints that an attorney failed to file an appeal are typically refuted by counsel's testimony to the contrary, counsel's contemporaneous notes of their consultations with their clients, or counsel's closing letter to the client confirming the client's decision not to appeal.

Commendably, some Assistant Federal Public Defenders in Tampa make it their practice to document their file when their clients do not want to appeal and confirm that decision by sending a closing letter to the client. Fading memories and busy trial practices, the likely reason Petitioner's counsel had little independent memory of his conversations with Petitioner, underscore the prudence of this practice. Contemporaneous notes will likely refresh memories and assist in the resolution of disputed claims. In light of *Gomez-Diaz*, maintaining contemporaneous notes about a client's decision to appeal or not, and documenting whatever that decision is, should mitigate against unfounded claims of ineffective assistance of counsel.

[3] In Ground One of his motion, Petitioner contends that his attorney never told him he would be sentenced as a career offender and that he "would have never pled had he known that he was going to be sentenced as a Career Offender, for less than 50 grams of cocaine" (CV Dkt. 2, pp. iii-iiii). Counsel, on the other hand, testified that Petitioner never wanted to go to trial, and that the only issue was his career offender status and the "huge" impact it would have

Second, his plea agreement contained a valid and enforceable appeal waiver clause, and there is nothing to indicate that any of the exceptions to the waiver apply (CR Dkt. 47, p. 11). Third, although his plea agreement contained a cooperation provision, Petitioner could not earn a USSG § 5K1.1 substantial assistance motion. By all accounts, that was the only way Petitioner could lessen the severity of the anticipated sentence. Last, and perhaps most ironic, Petitioner's advisory guidelines range was 188-235 months, but Petitioner actually received a downward variance and a sentence of 180 months.

Simply put, as counsel testified, there was no basis for an appeal, and Petitioner understood this.[4] Although counsel could not recall a specific conversation with Petitioner concerning an appeal, he did have a clear recollection that Petitioner understood there would be no basis to appeal so long as his sentence was within the advisory guidelines range, since his career offender status was conceded.

Petitioner's parents and girlfriend testified that after the sentencing hearing, counsel told them "not to worry" and that he would appeal the sentence. This testimony was questionable, however. Petitioner's family understandably was distraught with his 15 year sentence, and it is reasonable to believe that they would have asked counsel what recourse they had, including whether there could be an appeal. It is highly unlikely, however, that this experienced attorney would have told his client's family that he was going to file an appeal. That may very well be what the family

on Petitioner's sentencing guidelines. Counsel spent an inordinate amount of time counseling Petitioner about his career offender status and "lamenting" with him the impact of that status on the advisory guidelines. According to counsel, Petitioner's career offender status "drove the case" and 80% of their discussions focused on this. It was, in counsel's words, discussed "ad nauseam." According to counsel, Petitioner accepted the fact that he would be sentenced as a career offender. Counsel's testimony was credible. Petitioner's contentions to the contrary are just incredulous.

[4] Supporting counsel's conclusion that there was no basis to appeal, he noted that the sentence was a downward variance, it was a legal sentence, nothing was contested at sentencing, they were still working on a Rule 35 with the prosecutor, the plea agreement had an appeal waiver clause, and it was a "no brainer" that an *Anders* brief would have been required if an appeal had been filed.

wanted to hear or even thought they heard. However, counsel was adamant that he would not have mislead them by telling them not to worry and that he would appeal.

In any event, what the family understood really has no bearing on the issue. Rather, it is Petitioner's understanding that controls. While it would have been professionally unreasonable for Petitioner's attorney not to file an appeal if Petitioner had specifically requested him to do so, *Gomez-Diaz,* supra at 792, his testimony that he told his attorney to appeal is simply not credible. The *per se* duty to appeal outlined in *Flores-Ortega* was never, therefore, triggered.[5] Notwithstanding, I do find that there should have been a consultation about an appeal after Petitioner was sentenced.

Significantly, at the conclusion of Petitioner's sentencing hearing, the Court explained Petitioner's appellate rights to him. Further, born out of *Gomez-Diaz,* Petitioner was instructed that counsel "will go over the advantages and disadvantages of filing an appeal," was "duty-bound" to file an appeal if he was asked to do so, and would "document his file to ensure there's no misunderstanding about your decision in the matter" (CR Dkt. 71, p. 26).

Notwithstanding that implicit suggestion, there is no evidence that such a discussion occurred between attorney and client. Although it is undisputed that counsel conferred with Petitioner for a minute or two after the hearing ended, Petitioner maintains that during this conversation, he asked counsel what they could do, counsel mentioned an appeal, Petitioner told him he wanted to appeal, and counsel told him he would come by the jail to discuss it. While counsel could not recall that specific conversation, he confirmed that there was nothing in his file indicating

---

[5] Indeed, counsel was court appointed and there is no reason for not filing a simple notice of appeal, if Petitioner had indeed asked him to. After all, counsel would be paid under the CJA for filing the notice and the *Anders* brief he believes would have been filed. Moreover, counsel's practice was to file a notice of appeal regardless of whether there was merit in the appeal, if asked to do so by a client. The absence of a notice of appeal therefore raises a strong inference that he was never asked to file one.

4

that he visited Petitioner in jail after the sentencing hearing, and he acknowledged that he probably should have done so.

I find that after he was sentenced, Petitioner asked his attorney what could be done and the subject of an appeal did come up, likely in the same context it had come up in the prior discussions between counsel and client. Immediately after being sentenced, when the realty of the 15 year sentence sunk in, it would have been understandable for Petitioner to ask his attorney what they could do and to express a renewed interest in appealing. It is also reasonable to find, considering Petitioner clearly understood from prior conversations with counsel that there was nothing to appeal, that counsel would have told Petitioner he would come by the jail to discuss it, removed from the emotional atmosphere of sentencing, so that they could focus on a meaningful avenue for relief, a Rule 35 motion.

That discussion never took place, however. Under the circumstances, it may be that a rational defendant would not have wanted to appeal but rather devote his efforts to obtaining a reduction of his sentence pursuant to a Rule 35 motion. Notwithstanding, "[i]n such circumstances, *Flores-Ortega* mandates that the attorney conduct a specific type of consultation, informing his client about the advantages and disadvantages of appealing and making a reasonable effort to determine the client's wishes. *Gomez-Diaz v. United States*, 433 F.3d at 792 (citing *Flores-Ortega*, 528 U.S. at 487).

There is no doubt that prior to sentencing, counsel fulfilled this Sixth Amendment responsibility and determined that Petitioner understood and agreed that there was no basis on which to appeal. And there is no doubt that counsel understood that Petitioner intended to forego a meritless appeal in hopes of gaining a Rule 35 motion from the prosecutor. Nevertheless, a post

sentencing jail conference should have occurred, which more likely than not would have obviated this claim.

The issue turns, therefore, not on whether Petitioner asked counsel to appeal, but on whether the discussion of the advantages and disadvantages of an appeal took place at the appropriate time. While there is no bright line when such a conference should occur, certainly there should be a discussion where, as here, the client renews interest in an appeal after being sentenced. *See Roe v. Flores-Ortega*, 528 U.S. 470, 479-80 (2000) (rejecting brightline rule that counsel must always consult with defendant regarding appeal); *Medina v. United States*, 167 Fed. Appx. 128, 134-35 (11th Cir. 2006)(where client neither instructs attorney to appeal nor asks that an appeal not be taken, relevant question in determining whether attorney performed deficiently is "whether counsel in fact consulted with the defendant about an appeal").

Accordingly, I find that after Petitioner expressed a renewed interest in appealing immediately after he was sentenced, counsel failed to consult with his client to make a "reasonable effort to determine the client's wishes." *Flores-Ortega, supra* at 478. Therefore, it is

**ORDERED AND ADJUDGED:**

1.      Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 6) is GRANTED *in part* as to Ground Two. Petitioner is entitled to an out-of-time appeal.[6]

2.      The Amended Judgment in Criminal Case No. 8:09-CR-257-T-27AEP as to

---

[6] *Gomez-Diaz v. United States*, 433 F.3d at 793("If the evidence establishes either that Petitioner's attorney acted contrary to his client's wishes, or that he failed to fulfill his duty to attempt to determine his client's wishes, prejudice is to be presumed, and Petitioner is entitled to an out-of-time appeal, regardless of whether he can identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver").

Defendant Frankie Cuevas (CR Dkt. 62) is VACATED.

 3. Defendant/Petitioner Frankie Cuevas is RE-SENTENCED to the same sentence as originally imposed in the Amended Judgment in Criminal Case No. 8:09-CR-257-T-27AEP (CR Dkt. 62). The Clerk shall enter a new Judgment in the Criminal Case imposing the same terms as originally imposed.

 4. Attorney Sharon Samek is appointed in the criminal case to represent Petitioner in the direct appeal of his criminal conviction and sentence.

 5. Defendant/Petitioner is advised that he has fourteen (14) days within which to file an appeal in accordance with Federal Rule of Appellate Procedure 4(b)(1)(A)(i).

 6. The clerk is directed to file a copy of this Order in the associated criminal file, 8:09-CR-257-T-27AEP.

 7. The clerk is directed to enter judgment in the civil case accordingly. The clerk is further ordered to file a copy of civil judgment in the corresponding Criminal File 8:09-CR-257-T-27AEP and close the civil file.

 **DONE AND ORDERED** this $20^{te}$ day of June, 2012.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record
Petitioner